Lipscomb, J.
The legal character and effect of the instrument called the testimonio, such as is presented in this record by the appellee in support of his title to the land, lias often been presented to the consideration of this court, and in the case of Smith v. Townsend, decided by the Supreme Court under the Republic, (Dallam, 569,) underwent a most thorough investigation, and the court arrived at aud expressed the following conclusion: “From the authorities and laws to which we have referred, "as well as from the facts proven in this case, we conclude that copies of notarial acts were, at the time of the execution of this instrument, regarded in contemplation of law as originals; that they were the only evidence of title which the party interested was entitled to retain in iiis possession, and that they are properly admissible for all purposes which, by the introduction of the originals themselves, could ■be effected.” It will be seen, by reference to the case of Mitchell v. The United States, 9 Peters, 732, that the- same doctrine was held by the Supreme -Court of the United States to apply to instruments and evidences of title executed and issued by any other officer authorized at the time by law to do such acts. And we have recognized this doctrine as applicable to the testimonio •delivered by the commissioner for extending titles to the interested party whenever it lias been presented to our consideration. TVe have regarded it asan original, and to answer all the purposes of an original, to the party to whom it was given, and we have ever doubted the. correctness of supplying its placo by a certiiied copy from the General Land Office until the absence of the original testimonio had been satisfactorily accounted for.
That (lie testimonio is a higher grade of evidence than the certified copy from the land office seems to me, clear and demonstrable. If the certified ■copy is used, it is to supply (he, absence, of the testimonio; and it is therefore a substitute for au original paper title, aud of course secondary in grade as ■evidence to the original, for which it has been substituted.
Again, it is better evidence, for another reason, than tile certified copy when *107 applied to titles extended by a land commissioner, because tlie commissioner, after making-out bis protocol or matrix of the title, may, for good and sufficient reasons, withhold and refuse to extend the title; and it may never have issued and no title passed. This would not appear from the certificate of a copy of the protocol. To admit tlie certified copy without its having- been shown that the original testimonio had been issued and its absence satisfactorily accounted for, would enable a party so rejected years after to obtain a title by resorting to the General Land Office and procuring therefrom a certified copy of the protocol; and this he could do as often as he could find a victim to perpetrate his fraud upon by selling the same land over and over again.
Again, if he had received the original testimonio after selling the land and delivering up to the purchaser this testimonio, he could apply to the laud office for a certified copy and again sell the same land to an innocent, unsuspicious purchaser. Such a swindling transaction could in a great measure be controlled, if tlie certified copy could never be used as evidence, until after the absence of the original title had been reasonably accounted for to the satisfaction of the court.
It is true that a vigilant attention to the registration laws would prevent the perpetration of many of those frauds, but then, when it is considered how very difficult it is for a vendee to ascertain with certainty where to look for tlie record, so many new counties having been formed and boundaries changed that he would perhaps have to look for the record some hundred miles from where the land was situated, it is obvious that without a stringent application of the rule requiring the production of the original the registration law would but very imperfectly guard against fraud.
I believe, then, that the testimonio is, to the party interested, to be considered as a muniment of his title, occupying the same grade and as conclusive of his right to the land described in it as a deed of conveyance in tiie usual form at common law, where tlie common law is the rule of action. I have presented these views not only because I think them to be sound, but that I believe that the latter part of the extract I have given from the opinion of tlie court in Smith vi Townsend has been misconceived, and lias been thought to be repugnant .to the opinion here expressed. I believe that the court did not moan or intend to be understood as holding that tlie matrix or protocol could be used by the party claiming under it, -without any regard to the original testimonio, whether it liad ever issued or not; that it only meant that the testimonio was clothed with all the attributes to give it the validity of tlie original.
The testimonio offered in evidence in this case in tlie court below by the appellee was legal and competent as such, and was conclusive in support of his title, unless the appellant successfully impeached its validity by evidence destructive of such validity.
This his counsel contends lias been done, by showing that the protocol in the land office was not executed by the commissioner, if'wanting liis name thereunto í^ibscribed. And we are referred to articles eight and ten of the instructions to the commissioner. (Laws C. and T., 71.) The first of those articles is in the following words: “He shall form a book in calf, of paper of the third seal, wherein he shall write the titles of lands which he distributes to the •colonist^ specifying their names, boundaries, and other requisites and legal circumstances. And he shall take from the said book attested copies of each possession upon paper of the second seal, which he shall deliver to tlie person interested to serve him for title.” Article ten is as follows: “ Said book shall be preserved in tlie archives of the new colony; andan abstract shall be taken therefrom, to be transmitted t o Government, containing the number and names of all the colonists, tlie quantity of land given to each,' expressing- those which are for cultivation, irrigable or not irrigable, and those which are given them for grazing lands.”
Can the non-observance of these instructions on the part of the commissioner, in not signing liis name in tlie book to tlie protocol, invalidate the title issued •or extended by him to tlie appellee? We think not. One object embraced in *108 them is the extension of the title to the interested party. This has been done. All others were matters bet,ween the commissioner and the Government, and. for their fulfillment he was responsible to his Government, and for such failure the grantee was not answerable. When he received from the commissioner his testimonio we are bound to presume, until the contrary is proven, that he believed that the commissioner had and would fulfill all that his Government required him to do, and that he did not participate in his failure to do so, if any such failure, occurred. The principle is believed to be a sound one, that where a State oflicer does an act which would bo a violation of his duty, unless certain terms or conditions had been first performed by an individual, such performance shall be deemed, prima facie, between the individual and the State, to have taken place. And this would be much stronger against the-Government where (he individual had done everything that the law required him to do, and the omission, if any, was on the part of the oflicer, in not doing tilings required of him by the Government in matters in which the individual could not participate, but it was wholly between the oflicer and his Government. The commissioner was directed to make an entry of the title in a book, not to be delivered to the grantee as a muniment of his title; ho was to have nothiug to do with it, hut it was to remain in the archives of the colony. It was to serve for the information of the Government of what had been done, and was designed not only as a check on that oflicer, but was intended to be a means by which the grantee could protect himself if his testimonio should accidentally be lost or destrojred. The abstract of the title was to be furnished to the Government by the commissioner, no doubt, for the purpose of better understanding the number of the colonists and the revenue accruing as dues for the land granted. In all of this the grantee had nothing to do; lie had performed everything required at his hands, aud had received liis title, and to visit upon him the omission of the commissioner to sign his name to the protocol from which the title was made, as a counterpart thereof, would seem as unjust and unreasonable as to hold that a patentee was answerable for the omission of the Commissioner of the General Laud Office to have his patent recorded before it was issued. There is no real difference in requiring the protocol to be entered first aud the testimonio to be made a counterpart thereof, and in requiring the title to be copied before it is issued, which copy is to remain of record. In principle there can be no difference which is actually first written; either would be a compliance with the spirit of the eighth article of the instructions to the commissioner, which onl}' intended that they should be counterparts of each other.
It may well, however, be doubted if there has been any substantial failure on the part of the commissioner in this case from which any injury could result to any one, except to the grantee on the contingency of his testimonio' being lost or destroyed. In such an event he might not bo able to supply its loss from the defect in the protocol in not beiug signed. In every other respect there seems to me to have been a substantial compliance. The abstract of titles has been returned, as required by the tenth article of the instructions, showing the laud granted to the appellee, thus affording the Government the information required. Aud all of the title papers are there perfect and complete, with the exception of the commissioner’s signature to the grant. Under such circumstances it might well bejmsisted that it was a substantial compliance with the law, so far as one holding under an original testimonio, fairly and in-good faith executed by the commissioner, was concerned.
In the case before us, we believe that the efl'ect of the evidence introduced by the appellant from the General Land Office would at most be onty to throw on the testimonio a suspicion that it was a forgery or fraudulently obtained, rendering explanation on the part of the grantee or the interested party necessary to remove that suspicion. Does the record furnish that explanation ? We believe that it does, and we will briefly point out in what it consists. The evidence shows that it had been duly executed by the commissioner, and that therefore it was not forged. It is shown that Kimbro brought himself within. *109 ■the provision of tlie law as one entitled to the quantity of land aslced for by .him as a colonist in Burnett’s colon}'; that he had tdken all the steps that he was required to do, and that there could have been no motive for a fraud, as it interfered with no' previous or contemporaneous claim for land. It shows that the abstract of his title was returned as required by the-law, and is now in the General Land Office. And it further shows that his title had been recorded more than nine years in the proper office in the county in which the land was situated before the appellant made his file and survey on which his patent issued, giving sufficient time to show it, if auy fraud had been committed, or to show whether he had obtained his land elsewhere. These facts, wo believe, are sufficient to remove whatever imputation unfavorable to the appellee that rested on his title.
This is quite unlike the case of Jones v. Menard, reported in 1 Tex. R. In that case Menard averred that he held the land by grant, and he neither produced the original testimonio nor showed that it had ever been extended to him by the commissioner. He relied solely on the protocol to support his averment; and that protocol was defective, inasmuch as it had not been executed by the commissioner. It was decided to be not sufficient to support his averment, and that it was at most an inchoate title; and without the approval of the board of land commissioners, under the act of Congress referred to in the opinion, could have no standing in court.
In this case the appellee had received his title, and it therefore does not come within the provisions of the act referred to, and it was a title that the commissioners could not act upon if it had been laid before them. See Smith v. State, a case decided by this court at Austin, December Term, 1849, 5 Tex. R., 397.
■ To hold therefore that his title thus untainted by fraud or auy other vice in which he participated, was invalid, would be placing him in a worse condition than Menard — an absurdity that it would be difficult to sustain by any sound train of reasoning or well founded on principle.
In the court below there was a great deal of irregularity in the pleading, giving rise to other points presented by the counsel for the appellant, but, we believe, not sufficient to control our judgment, and they are therefore passed over without notice.
Judgment affirmed.
Hemphill, Ch. J.
That my views on some of the questions raised in this case may not be misunderstood, I propose to present them very briefly.
The commissioner of the colony is required by art. 8th of his instructions (p. 71, Laws of C. and Texas) to form a book in calf, of paper bearing the impression of the third seal, wherein he shall write the titles of the lands which he distributes to colonists, specifying their names, boundaries, and other requisites and legal circumstances; and he shall take from the said book attested copies (testimonios) of each possession upon paper of the second seal, which he shall deliver to the person interested to serve him for title. This instruction does not differ in substance from the regulations bjr which, for centuries, in Spain notaries had been directed and governed in the execution of public instruments. They were required also to have a book in calf, in which ■anciently they wrote the minutes of every act as required by the judge or prescribed by the contracting parties. But this custom has long’ been disused. By royal decree in 1853 they were required to draw up in their registers the original act in full, and. not by notes or minutes, and a copy was furnished the party instead of the art itself, which was formerly made out from such notes. (3 Partidas, tit. 19, law 9th ; Smith v. Townsend, Dallam. 572.) The commissioner in issuing title is required to observe nothing more than the customary forms in the execution of public instruments, lie must write the original draft or protocol in his book, and give a certified copy or testimonio to the interested party to serve him as evidence of title, just in the same way and to the same extent that a testimonio or copy of any and all public instruments extended before a notary serves the parties thereto as the evidence of their *110 rights. In neither the one ease nor in the other, neither in the grant of lands-nor in contracts or agreements between individuals executed before a public officer, arc tiie parties entitled to the original or protocol of the title or of the instrument of conveyance or agreement. In all cases these remain with the officer, and certified copies or testimonios are the only evidence of right which tiie parties in any case can possibly receive. A testimonio or copy of a title for laud executed by a commissioner furnished as high evidence of right as-does a testimonio or first copy of any act executed before a notary public, but not more high or more conclusive. They, one and all, alike canse faith or full proof, but tiie force and effect of each and every testimonio of any act executed by any public officer, whether he be a commissioner or notary public, may be impaired and destroyed upon grounds applicable alike to all testi-monios or second originals. I cannot now discuss the grounds on which a testimonio may be successfully impeached. I have not access to such books as would render such discussion either safe or profitable. The law, it is believed, denounces the nullity of instruments, or rather their incapacity to produce J faith for the want of any solemnity, but for the present I will only refer to a general rule or principle recognized in Spanish jurisprudence and by Spanish jurists, to the effect that the weight, or authority of a public instrument is derived from the protocol, and it is laid down by Asso and Manuel that every instrument of writing made without the protocol is null, (1 White's liecop., p. 207.) That this rule, accords with reason is manifest from the inspection of a tes-timonio or copy, as, for instance, that introduced by the defendant. Every part and portion of the instrument is but the copy of another paper. There is nothing original about it except the certificate of the commissioner that he had compared it with the original remaining in the archives of the colony and that it- was faithfully anil legally copied. The probability of the existence of a copy without the original cannot be conceived, and hence tiie principle that the authority of tiie testimonio or the whole instrument must depend upon t lie existence in fact of the original or protocol. Wore that not the case, testimonios or copies of land titles, if not required to bo verified by the original, might he issued to an illimitable extent by a corrupt officer, and the history of this country oil many a lamentable page is fraught with the evidences of the fraud and dishonesty of some of the public agents in ascertaining the claims and distributing tiie titles to public lands. All the requisites and formalities prescribed in the grant of lauds cannot, as our history shows, be too strictly observed and enforced. The want of tiie signature of the commissioner to the original is, in my view, a most formidable obstacle to the validity of the testimonio.
But. I am of tiie opinion that under all of the circumstances of this case, some of which were proven and some seem t-o have been taken as admitted, the omission of (lie signature must have arisen from tiie mistake or oversight of the officer. There was no doubt, I presume, tlmt Kimbro was a man of family anil was in every respect entitled lo the land, hut this was not proven, except from the recitals of the defective title. The original, in its imperfect state, remained in the archives of the colony, and was thence transferred to the General Land Office, and seems for some time to have been regarded as perfect. It. must have been taken as perfect at the time of issuing the abstract of land titles in 1838, the abstract being framed from tiie original or protocol of titles deposited in the. land office.
The other circumstances, such as its early record, &c., stated in the opinion of tiie court, show that no fraud could have been intended ; and had the original Wen inaccessible, as. for instance, at Saltillo or Monclova, such circumstances would have raised tiie presumption of the existence in fact of the original. Such was the rule held in several cases at Austin, December Term, . ISM.
The principle of tiie case of Smith v. The State (5 Tex. R., 397) does not, in my view, support the position that Kimbro could not have waived his rights-under this title and applied to a hoard of land commissioners for a certificate.. *111 The objection to the title in that case -was, not that it was not perfect in form, and solemnity of execution, hut that its vagueness of description pi-evented the identification of the land. There was no defect, as far as appears in either protocol or testimonio. There was no testimonio offered in the case. The copy of the complete title that was offered was certified from the General Land Office, and of course must have been a copy of a perfect protocol. "Where a title was defective, either for the want of or the imperfect state of the execution of the original or of the testimonio, the party holding under such title might, in my opinion, have relinquished his uncertain and equitable rights under such title and have applied to a board of land commissioners; and a certificate granted on such application would be a valid foundation for a survey or patent.' .
Note48. — De Leon v. White, 9 T., 598; Word v. McKinney, 25 T., 258; Andrews?;, Marshall,20’ Tm 212; Hatchett v. Conner, 80 1\, 104; Wood v. Wilder, 42 T., 396.
Note 49. — Jenkins v. Chambers, 9 T., 167; Jones v. Garza, 11 T., 186; Hatch v. Dunn, 11 T., 708; Kuis v. Chambers, 15 T., 586; Howard v. Colquhoun, 28 1\, 134.
I concur in many of the views talcen by the majority of the court. The tes-timonios or first copies of titles issued under the former Governments have for a long time either been misunderstood or held in a species of disfavor. By the registry law of 1836 their existence at all is only by implication recognized. And by a law of 1S4G a testimonio, or the copy which the party received at the time the public instrument was executed, seems to have been utterly repudiated. (Art. 740, Dig.) This provision requires the original of acts between individuals executed before a public officer to be deposited in the clerk’s office, and authorizes, copies of these to be received in evidence, but they must be certified to by the clerk or the officer with whom they are deposited. This is to exalt a certified copy above the original itself, and is repugnant to the first principles of the laws of evidence. I have used the word testimonio in these brief remarks frequently. It means, literally, a copy. But this is not at all descriptive of its force and effect in evidence. It might be called witli propriety the second original, and that was formerly and very generally its denomination.