## WILLIAM M. SHACKFORD v. TOWN OF NEWINGTON.

An article in a warrant for a town meeting was, to see if the town would raise $340.00, or any other sum, for each volunteer who may enlist for three years, or during the war; and the town voted "to pay those who have enlisted since the date of the warrant, and those who may enlist to fill the quota of this town under the late call of the President for volunteers for three years, or during the war, the sum of $340.00, and authorize the selectmen to hire money for that purpose;" and it was *held* that this must be regarded as a vote to raise that sum for each volunteer.

Where the selectmen of the town borrowed of the plaintiff $3100.00, and gave the note of the town for it, reciting a vote to pay $340.00 for each volunteer for three years, or during the war, and that the money was advanced for the purposes of that vote, it was *held* that until the contrary was shown, it is presumed that the selectmen acted rightly, and borrowed the money for a lawful purpose, which would be for future enlistments only.

*Held*, also, that the vote to pay for future enlistments was valid, although the part relating to past enlistments was not.

The legislature have power under the Constitution, to authorize towns to raise money to pay bounties to volunteers.

ASSUMPSIT for money had and received, and is brought to recover six months interest on a promissory note given by the town of Newington, and payable to the plaintiff for the sum of $3100. The writ is dated August 26, 1864. The following is a copy of the note :

Whereas, the town of Newington, on the first day of September, A. D. 1862, voted to pay three hundred and forty dollars to each volunteer, for three years or during the war, under the late call from the President, and authorized the selectmen of said Newington to hire money for the purpose, and whereas, William M. Shackford, of Portsmouth, trustee, has advanced the said town of Newington the sum of thirty-one hundred dollars for the purposes of said vote :

Therefore, for value received, the town of Newington promise to pay William M. Shackford, trustee, or order, the sum of three thousand one hundred dollars, in five years, with interest semi-annually.

Portsmouth,          Signed—JOSHUA B. PICKERING,
Sept. 9, 1862.          W. W. NUTTER,
RICHARD P. HOYT,
Selectmen of Newington.

To prove the authority of the selectmen to give this note, the plaintiff introduced the record of the warrant for a town meeting of Newington on the first day of September, 1862, one article of which was, "to see if the inhabitants will vote to raise three hundred and forty dollars, or any other sum, for each volunteer who may enlist for three years or during the war; also, to see if the town will vote to raise two hundred dollars, or any other sum, for each volunteer who may enlist for nine months, and see if the town will authorize the selectmen to hire money for that purpose."

This was the second article in that warrant, and under it the inhabitants at the meeting so called, voted "to pay those who have enlisted since the date of the warrant, and those who may enlist to fill the quota of this town under the late call of the President for volunteers for three years, or during the war, the sum of three hundred and forty dollars, and authorize the selectmen to hire money for that purpose."

To the admission of this vote the defendants excepted upon the ground that it was not authorized by any article in the warrant, and also because it was contrary to law, as it authorized the raising of money to be paid to men who had already enlisted; but the court admitted the vote, and the defendants excepted.

The defendants also contended that the vote authorized the raising of three hundred and forty dollars, only, and not of the sum named in the alleged note; but the court ruled that it authorized the payment of $340 to each volunteer, and to this the defendants excepted.

There was no evidence beyond what was contained in the note, for what purpose the money was received by the town, or how it was applied, and the defendants contended that the note was therefore invalid, as it might have been given to pay those who had already enlisted; but the court overruled this objection, and the defendants excepted.

The defendants offered to prove that individuals in the town meeting openly proclaimed that said vote was not authorized by any article in the warrant, and that the vote would authorize the raising of $340 only; and that the fact that such objection was made, and such construction put upon the vote, was made known to the plaintiff at and before the

time the note was given ; but the court rejected the evidence, and the defendants excepted.

The defendants also contended that there was no proof that the note was authorized to be given; but the objection was overruled, and the note read, and the defendants excepted.

Whereupon a verdict was taken by consent for the sum of one hundred dollars and forty-four cents, subject to the opinion of the court; judgment to be entered thereon, or the verdict set aside, or modified, or a judgment entered for the defendants, according to the opinion of the court on the foregoing case.

*Hatch*, for defendant.

I. The vote of the town authorized the selectmen to hire the gross sum of $340, only, to be distributed in a certain manner. The note does not truly recite the vote, and the sum borrowed is nearly ten times more than authorized.

II. And the defendants offered to prove that this natural construction of the vote was understood at the town meeting, and by the plaintiff before he accepted the note. If the plain meaning of the vote can be altered by construction, this evidence was admissible, and for the consideration of the jury.

III. The vote authorized payments to persons who had enlisted before the vote was passed. This was not authorized by the warrant, nor by the statute. See Act of July 9, 1862, sec. 3, ch. 2580. That act allows towns to encourage future enlistments, not to reward those who have already enlisted. The legislature only can grant pensions, and that under particular limitations. Constitution, part I, sec. 36. It is evident that the whole of this money may have been applied to men who had enlisted before the date of the vote.

IV. The act of the legislature is in itself in violation of the Constitution, part I, sec. 12. The duty of military service is personal, and its burden cannot be transferred directly or indirectly to the tax-payers generally. The law was notoriously intended and used for the purpose of buying substitutes; this "equivalent" it was incumbent upon the drafted man alone to pay.

V. The defendants insist upon all their exceptions as stated in the case.

*Hackett*, for plaintiff.

It is not denied that the selectmen of Newington hired of the plaintiff $3100, and that they exhibited a copy of the record referred to in the case, and that they gave the note of the town therefor, or that the money was advanced for the purpose of the vote, or used for that pur-

pose. But it is claimed the legislature have passed an unconstitutional act, (ch. 2580,) that the town has passed an illegal vote, that the selectmen have transcended the power which the vote contemplated, and may have misapplied the money which they borrowed for the town.

I. I do not propose to discuss the constitutionality of the act under which the town proceeded.

II. Nor do I propose to discuss the question whether the town have passed an illegal vote. There is no proof that the selectmen misapplied the money.

III. The offer of the defendants to prove that some one of the voters of Newington so perverted the natural and legal effect of the vote of the town as to restrain the selectmen to the hiring of $340, was properly rejected. The vote of the town and the article in the warrant are to be construed together, and so read clearly import what the selectmen, in the vote of the town, say the town had done and authorized. Towns speak and are bound by their records; and will not be released by fanciful construction of individuals, or after-thought limitations upon their own power. They are not in a position to deny their power, or that they authorized the hiring the money which they have used. 1 Wallace U. S. Supreme Court Reports, 94, *Mercer County* v. *Hackett.*

IV. It is by no means certain, if the town had voted to pay, and had actually paid, volunteers who had enlisted after the date of the warrant and before the meeting, upon the understanding that the town proposed to pay a bounty and that those who enlisted before the meeting would be treated like those who enlisted after the vote, that their doings would have been invalid, or a note given for the money void. If the enlistment were made in consideration of the bounty to be voted and paid, the payment would only be the fulfilment of a duty, and not a gratuity for past services. It would simply be a recognition of an obligation to pay for services the town was bound to render and pay for.

But if the law were otherwise, if a citizen who did not wait for the town meeting, but promptly answered the call of his country, with the understanding that his promptness should not deprive him of his bounty, he cannot legally be paid bounty. It would be matter of defense, to show that the money in this case was unlawfully loaned and improperly used. But it was not even pretended at the trial, that any of the money was so loaned or so applied. There was no offer or ability to prove that one dollar was so applied to pay for enlistments after the date of the warrant and before the meeting.

Besides, if the selectmen had the authority to borrow money on the credit of the town for a lawful purpose, and the money in good faith was advanced on that authority, it is no concern of the plaintiff what the selectmen or the town finally did with the money. 21 Howard, U. S. Supreme Court Rep. 545–6, *Comr. Knox Co.* v. *Aspinwall &*
*als.*; 6 Ellis & Blackburn 327, *The Royal Br. Bk.* v. *Tarquand*; 5

Ellis & Bl. 245, S. C. ; 25 E. L. & Eq. 114, *Maclae* v. *Sutherland*.

V. As the case allows me to do so, I wish to call the attention of the court to the fact, that so anxious were the town of Newington to avoid the draft, and to show the patriotism of the individual voters, that the record shows that upon the question of paying $340 to each volunteer, and authorizing the selectmen to hire money for that purpose upon the credit of the town, a call was had of the yeas and nays, and each voter's name is recorded (as upon the journal of the house of representatives,) and in this small town the yeas were 76, nays 5.

VI. No one of the five in the minority took the trouble to obtain an injunction against the town. But the town subsequently recognized the debt and twice paid the interest upon it. The money has been used for the purposes and by authority of the town, and the only question is, Shall the town repay it?

BELLOWS, J. The first question is, whether the vote is to be regarded as a vote to raise $340.00 for each volunteer, or only $340.00 in all. The article in the warrant was, to see if the town would raise that sum, or any other sum, for each volunteer who might enlist for three years, or during the war : and under that, the vote was "to pay those who have enlisted since the date of the warrant, and those who may enlist, to fill the quota of this town under the late call of the President for volunteers for three years, or during the war, the sum of three hundred and forty dollars."

Standing alone the vote is not very explicit on this point ; but in connection with the warrant, we think there can be no doubt of the intention of the town to offer $340.00 for each volunteer. The question before them was, whether they would pay to each volunteer that or any other sum, and the vote to pay that sum to the volunteers must have been intended to pay so much to each, and not so much to all.

This construction also best accords with the nature of the subject, requiring, as it does, the payment of the bounty at the time of the enlistment ; whereas, with the other construction, the share of each could not be determined until the enlistments were completed, which might be at an indefinite period. We have, therefore, no difficulty in construing this as a vote to pay $340.00 to each volunteer.

The next question is, whether upon the evidence before us the loan is to be regarded as made for the purpose of paying bounties for future enlistments, or for both past and future enlistments.

The vote actually was to pay those who had already enlisted since the date of the warrant, and those who might enlist afterwards, but the note recites a vote to pay each volunteer for three years $340.00, and to authorize the selectmen to hire money for that purpose ; and states also that the plaintiff had advanced the sum of $3100.00 for the purposes of said vote.

The recital, then, is in general terms, and broad enough to include all who enlisted, whether before or after the passage of the vote, and

even before the date of the warrant; and yet, as the vote as actually passed, did not embrace those who enlisted before the date of the warrant, it could not properly be claimed that the money, or any part of it, was loaned to pay such volunteers.

If, then, the part of the vote giving bounties to those who enlisted after the date of the warrant, and before the vote passed, was invalid, the question is, whether the other part of the vote is valid, and if so, whether it is to be presumed that the loan was to pay bounties for future enlistments alone.

In the case of *Crowell* v. *Hopkinton*, 45 N. H. 9, it was decided that a vote to pay for past and future enlistments was valid as to, future enlistments, even if invalid as to those already made, and that is decisive of the question here.

Upon the other point we are of the opinion, that, as the case stands before us, it is to be presumed that the selectmen of Newington acted rightly, and borrowed the money for a legal purpose alone, which would be to pay for future enlistments, provided the other part of the vote was invalid. If that part was invalid, then the vote would stand only for future enlistments, and in accordance with well established principles the officers of the town would be presumed to have acted legally, and have borrowed the money for a lawful purpose alone, unless something is shown to rebut that presumption. If the invalid part of the vote had been wholly omitted, there could have been no presumption that the money was borrowed for an unlawful purpose, although the language of the recital is broad enough to include all volunteers, and so it must be, we think, if the part relating to past enlistments is invalid. If it had been expressly stated in the recital that the money was advanced to pay past, as well as future enlistments, the presumption that the officers had acted rightly would have been overcome, but as there is nothing in the terms used to designate what class of volunteers was to be provided for, the presumption that the money was borrowed for a rightful purpose must apply.

The maxim *omnia presumuntur rite esse acta* is well established, and its application to acts of public officers is recognized in numerous adjudged cases in England and America. Broom's Legal Maxims, *729, and cases cited; *Powell Clark* v. *Milburn Clark*, 3 Wilson's Rep. 355 ; *Rex* v. *Hawkins*, 10 East 216.

In these two cases, persons were elected to office which required as qualifications certain observances, in the one case that the incumbent should sign the thirty-nine articles in the person of the Bishop of Durham, and publicly read and assent to them; and in the other case, that he should have partaken of the sacrament .within a year; and it was held that until the contrary was proved, the law would presume that these things had been duly observed. See, also, *Powell* v. *Sonnett*, 3 Bingh. 381 ; 13 Eng. C. L. 15 ; *Mark* v. *Butler*, 1 Roll. Rep. 83 ; Bull. N. P. 298 ; Matthews on Presump. Evi. 26 to 30, and note on p. 27.

In *Dollarhide* v. *Muscatine County*, 1 Iowa 158, it is laid down that it will be presumed that a person in authority has done his duty

until the contrary appears.   So is *Wray* v. *Ho-ya-pa-nubby*, 10 S. & M. 442, where it was held that the presumption applied to most acts of an official or ministerial character.

In *Hartwell* v. *Root*, 19 Johns. Rep. 346, it was held that it being the duty of a sheriff to levy an execution upon certain property at a certain time, which property he afterwards sold on the execution, it should be presumed that he made such levy.   Much the same is *Boyd* v. *Buckingham*, 10 Humph. 434 ; 12 U. S. Dig. 276, sec. 220.

The ordinary presumption that an officer has done his duty should not be allowed to sustain a vital jurisdictional fact, but when the main fact is made out by proof, and the question is one of time merely, this presumption may be allowed to govern.   *Sheldon* v. *Wright*, 7 Barb. Sup. Ct. Rep. 39.

If an officer serve a writ of replevin, the presumption is that he took the bond required by law, though it be not stated in the return.   *Shorey* v. *Hussey*, 32 Maine 579.

So, where there is a record of the choice of officers at a town meeting, it will be presumed that they were chosen by ballot as the law requires.   *Mussey* v. *White & al.*, 3 Greenl. 298.

The acts of a public officer having competent authority may be presumed to be in conformity with law, and as affording proof of the facts on which such action was founded.   *Houston* v. *Perry*, 3 Texas 390.

So, where the acts of a State officer would be a violation of duty unless certain terms or conditions had first been performed by an individual, such performance will *prima facie* be presumed as between the individual and the State.   *Titus* v. *Kimbro*, 8 Texas 210.

All acts of public officers, especially of judicial tribunals acting within their jurisdiction, are presumed to be done rightly until the contrary is proved.   *Dyson* v. *The State*, 26 Miss. (4 Cush.) 362.   Commissioners appointed to sell land returned a bond to which an obligor's name was affixed by another ; in the absence of proof to the contrary, the authority so to sign it will be presumed to have been shown to the commissioners.   *Nebbett* v. *Cunningham*, 27 Miss. (5 Cush.) 292.   See also, 2 Cow. Phillips' Evi. 296–7, and cases collected.

In favor of the acts of public officers, the law will presume all to have been rightly done unless the circumstances of the case overturn the presumption.   *Ward* v. *Barrows*, 2 Ohio N. S. 241.

The report of the doings of public officers in appraising, granting and surveying land, though it does not state all they were required to do, is *prima facie* evidence against a stranger, that all was rightly done.   *Allegheny* v. *Nelson*, 25 Penn. St. Rep. 332.

So, in case of a return of a sale by a sheriff, that he advertised the sale as the law directs, it will be presumed that he advertised it at the place of sale.   *Drake* v. *Mooney*, 31 Vt. 617.   So, it will be presumed that a service of a writ was within an officer's precinct, though it is not stated in his return.   *Richardson* v. *Smith*, 1 Allen 541.

The presumption is, that the register of the land office, as a public officer, did his duty in the performance of any particular act; and he

who impeaches it as illegal, must prove the allegation.    *Lea* v. *Polk County Copper Co.*, 21 How. U. S. Rep. 493.

A note taken by a public officer intrusted with funds, some of which he has power to loan, and some of which he cannot loan lawfully, will be presumed to have been given for such as he could lawfully loan. *Murray* v. *Smith*, 28 Miss. (6 Cush.) 31.

In the case before us, the selectmen might lawfully borrow money to pay for future enlistments, but could not lawfully borrow to pay for enlistments before the date of the warrant, and perhaps not for those made between that time and the passage of the vote; and we think it a fair application of the maxim as deduced from the decided cases to, presume, especially against the town for whom the officers acted, that it was borrowed for the lawful purpose, until the contrary is shown, the same as in cases where the return of the sheriff fixed no time when service was made, or stated no place; and yet though the returns were broad enough for any time or place, it is presumed that the acts were done at the times and places required by the officer's duty. So, where the State treasurer had two funds, one only of which he could lawfully loan, it was presumed that the note given him for money loaned was for that which he was authorized to loan, and not the other.

Upon these principles and views, we are of the opinion that the burden is upon the defendant to prove that its officers acted unlawfully and borrowed the money for an unlawful purpose. It is true, that the vote as passed, in form, may have authorized them to do so; and yet, although this circumstance might make less evidence sufficient to rebut the presumption, the presumption must stand unless it is overcome by proof.

It may, however, admit of very serious doubts whether this presumption can be rebutted at all by showing that the money, in part, or all, was applied to a purpose not authorized by law. If the money was loaned in good faith, and for a lawful purpose, so far as the plaintiff was informed or concerned, it is by no means clear that he could be affected by a subsequent misapplication of it.

The selectmen had power to borrow money to pay for future enlistments, and had they represented the loan to be for that purpose, or had the course of the negotiations indicated that object, it could hardly be contended that the subsequent application of part of the money to bounties for past enlistments, could affect the plaintiff's claim.

If the money was loaned to be applied to past enlistments, and this was understood by the lender when he made the loan, a different case would be presented; but if not so understood, it would clearly be unjust to affect him by a subsequent misapplication of the money.

These views make it unnecessary to consider the validity of that part of the vote raising money to pay for enlistments between the date of the warrant and the passage of the vote. The conclusions we have reached are upon the assumption that it was not valid.

It is urged that the legislature had no power under the constitution to authorize towns to raise money to pay bounties to volunteers; but in the

case of *Crowell* v. *Hopkinton*, before cited, it was held that such a vote by a town was valid, and we are satisfied with that opinion.

We think, also, that the evidence offered by the defendant, that individuals at the town meeting proclaimed that the vote was not authorized by any article in the warrant, and was for $340 only, was not admissible; nor was it material that plaintiff had notice of this objection, and the construction put upon the vote. The evidence could be nothing more than an attempt to control the validity of the vote, and its construction, by the opinion of an individual.

With these views there must be

*Judgment on the verdict.*